# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERTO TRUJILLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 CV 8541 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| AMERICAN BAR ASSOICATION and ) | |
| JOHN KRSUL, JR., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion to dismiss Plaintiff's complaint [27]. Pro se Plaintiff Roberto Trujillo contends that he was wrongfully demoted and discharged by Defendant the American Bar Association ("ABA") after he reported wrongful conduct relating to a pension plan sponsored by the ABA. Plaintiff brings two claims relating to his eventual termination from the ABA's Human Resources Department. The first alleges a violation of the Employee Retirement Income Security Act of 1974 ("ERISA") pursuant to 29 U.S.C. § 1132(a)(3). The second is a claim under Illinois state law alleging that Defendant Krsul intentionally interfered with Plaintiff's economic relationship with the ABA. For the reasons that follow, the Court grants Defendants' motion to dismiss.

## I.    Factual Background[1]

The ABA sponsors employee benefit plans for its employees that are governed by ERISA. Compl. ¶¶ 6–7. Defendant Krsul chaired the A-E-F-C Pension Plan (the "Plan"). *Id.* at ¶ 8. The Plan Administrative Committee is the named fiduciary of the Plan; as chair of the

---
[1] The facts are drawn from Plaintiff's complaint. For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth therein. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Committee, Defendant Krsul qualifies as a Plan fiduciary as well. *Id.*

Plaintiff was hired by the ABA in June of 2010 to serve as program director of the Human Resources Department; his title later changed to Director of Special Projects/Programs. In this role, Plaintiff assisted the Director of Human Resources with various policies, procedures, and employee benefits. Subsequently, in May of 2011, Plaintiff was appointed to serve as Administrator of the Plan by the Plan Administrative Committee. As Plan Administrator, Plaintiff qualified as a fiduciary to the Plan under ERISA. *Id.* at ¶ 10. In his role as Plan Administrator, Plaintiff brought several concerning issues to the attention of Defendant Krsul and others at the ABA. Plaintiff alleges that he was disciplined and terminated by Defendants as a result of raising the issues.

Specifically, Plaintiff "alerted Krsul and the ABA that Plan records[,] documents[,] [and] participant election forms were lost or inaccurate," and told them of "previous overpayments and miscalculation of participant benefits [and] inaccurate payment profiles entered into * * * [a] payment system[.]" *Id.* at 4, ¶ 12. Plaintiff also advised that "the Plan actuary * * * knowingly maintained improper records of plan beneficiary names and genders." *Id.* Additionally, Plaintiff told Defendant Krsul and others at the ABA of billing and invoice payment inaccuracies by the Plan's attorney. See *id.* at ¶ 15.

On March 2, 2012, Plaintiff questioned whether certain invoice fees qualified as "settlor fees," such that they needed to be paid by the Plan sponsor, as opposed to by Plan assets. See *id.* at 5, ¶ 11. Under Section 6.4 of the Plan Document, Plaintiff had the authority to make this factual determination in his position as Plan Administrator. *Id.* at ¶ 17. Although Plaintiff provided supporting material to the Administrative Sub-Committee Chair regarding this issue, Defendant Krsul "decided to implement a biased determination format to decide the matter and

2

followed the Plan Counsel's opinion that the invoices should be paid through Plan assets," not by the Plan sponsor. *Id.* at 5, ¶ 11.

A few days after Plaintiff raised the settlor fee issue, Defendant Krsul emailed the ABA's CFO asking if "there was anything going on with the Plaintiff professionally that he should be aware of as the Committee Chair." *Id.* at 6, ¶ 12. Plaintiff alleges that Krsul intended to "slander" Plaintiff's reputation with the ABA. *Id.* On March 7, 2012 Plaintiff met with the ABA's Executive Director, General Counsel, and Director of Employee Relations to discuss the settlor fee issue further. Plaintiff provided materials from two law firms that allegedly supported Plaintiff's position that the fees should not be paid with Plan assets. *Id.* The Executive Director of the ABA allegedly "advised Plaintiff that if he were to continue to use an independent analysis toward the payment of Plan invoices, the Plaintiff's job would be in jeopardy." *Id.* Later that month, in retaliation for Plaintiff questioning invoices submitted by the Plan's attorney, Defendant Krsul encouraged the ABA to begin outsourcing the administration of the Plan, thereby reducing Plaintiff's duties as Plan Administrator by 50 percent. *Id.* at ¶ 14.

Plaintiff was terminated in June of 2013 and alleges that he has suffered a "severe financial impact," as a result. *Id.* at ¶ 21. Plaintiff sues for "equitable monetary relief" in "an amount in excess of $800,000," for his wrongful demotion and termination. *Id.* at 11, ¶¶ A–B. Plaintiff also requests punitive damages in excess of $950,000 for Defendant Krsul's actions. *Id.* at ¶ D. Finally, Plaintiff asks that the Court order Defendants to provide a written letter of recommendation because Plaintiff's demotion and termination has hindered his ability to find other employment. *Id.* at ¶ C.

## II.     Legal Standards

Defendants have moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss is not to decide the merits of the case, but instead to test the sufficiency of the complaint. See *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor. *Killingsworth,* 507 F.3d at 618.

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

**III.    Analysis**

Plaintiff asserts two claims in his complaint: (1) an ERISA claim for unlawful retaliation and termination under 29 U.S.C. § 1140, pursuant to the civil enforcement provision contained in 29 U.S.C. § 1132(a)(3); and (2) a state law claim against Defendant Krsul for intentional interference with Plaintiff's employee-employer relationship with the ABA. The Court turns first to the ERISA claim.

**A.    ERISA claim**

Defendants argue that Plaintiff fails to state a claim because he seeks money damages—a form of relief that is unavailable to him under § 1132(a)(3). The provision pursuant to which Plaintiff seeks relief "authorizes only a limited range of remedies, raising a threshold question as to whether the relief [he] demands is authorized." *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 804 (7th Cir. 2009). The Supreme Court has explained that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the [ERISA civil enforcement] scheme * * * 'provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (quoting *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)) (emphasis in original).

Section 1132(a)(3) provides:

> A civil action may be brought * * * (3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

(Emphasis added). Monetary relief is only authorized "if it falls within the scope of the 'other appropriate equitable relief' authorized by the statute." *Mondry*, 557 F.3d at 804. The Supreme

5

Court has interpreted the term "equitable relief" to refer to "those categories of relief that were *typically* available in equity, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)), such as an injunction or restitution. "Money damages are, of course, the classic form of *legal* relief," *Mertens*, 508 U.S. at 255, as opposed to equitable relief.

Here, Plaintiff requests that the Court "order[ ] the Defendants to provide Plaintiff an equitable monetary relief" in "an amount in excess of $800,000" for Defendants' failure to reinstate Plaintiff following his demotion and termination. Compl. at 11, ¶¶ A–B.[2] Plaintiff argues that he has the "right to seek monetary damages against a *fiduciary* (Defendant ABA and Defendant Krsul) for participating in a *fiduciary breach* (retaliation against Plaintiff for questioning the use of Plan assets to pay for settlor fees)." Pl.'s Memo. at 4, [32] (emphasis added). Plaintiff cites *Mondry* to support his argument that the money damages he seeks should be considered an equitable remedy, because they are sought against a fiduciary for a breach of trust. See *id.*

In *Mondry*, the Seventh Circuit explained that a claim for restitution is a legal remedy in some circumstances, and an equitable remedy in others. See 557 F.3d at 806. Restitution constitutes an equitable remedy "when it is sought by a person complaining of a breach of trust."

---

[2] Plaintiff also requests that the Court "order the ABA and Krsul to provide a written letter of recommendation as [their] unlawful demotion and termination continues to hinder Plaintiff's future employment prospects resulting in continued severe financial impact[.]" Compl. at 11, ¶ C. Defendants contend that a letter of recommendation is not an appropriate form of relief and that this request should be disregarded in determining whether Plaintiff states a viable ERISA claim. Defs.' Memo. at 10, n. 2 (citing *Sands v. Runyon*, 28 F.3d 1323, 1331 (2d Cir. 1994)). Plaintiff has not responded to this argument, nor does Plaintiff contend that a letter of recommendation qualifies as "other appropriate equitable relief," under § 1132(a)(3). The Court will not address whether the requested letter is a valid form of relief, as Plaintiff has conceded this issue by failing to address it in his opposition briefs. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument * * * results in waiver" and a party's "silence" in response to an arguments leads to the conclusion that a point is conceded).

*Mondry*, 557 F.3d at 806 (quoting *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 498 (7th Cir. 1999)); see also *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) ("Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."). In *Mondry*, the Court held that a claim for money damages qualified as equitable restitution—and thus was authorized under § 1132(a)(3)—because it arose from the defendant's breach of a fiduciary duty owed to the plaintiff. See 557 F.3d at 806–07. The Court explained:

> [Plaintiff] * * * is complaining of a breach of trust. American Family was a fiduciary, and [Plaintiff] charges that it breached its fiduciary obligation to her by failing to help her timely obtain the documents to which she was entitled under ERISA[.] * * * American Family arguably benefited from the delay that [Plaintiff] experienced in obtaining those documents and reversing CIGNA's erroneous denial of her claim for benefits: It had the interest-free use of money that should have been paid to [Plaintiff] much sooner than it was. Restitution would thus force American Family to disgorge the gain it enjoyed from the delay that its breach of trust helped to bring about.

*Id.* Money damages do not qualify as equitable restitution, however, where the defendant hasn't breached a fiduciary duty owed to the plaintiff or hasn't profited from the breach. See *id.* at 808–09 (holding that plaintiff did not have an equitable restitution claim against CIGNA because plaintiff could not impute a fiduciary duty to CIGNA nor did CIGNA profit from the alleged wrongdoing). Here, Plaintiff's claim for monetary relief for retaliation and wrongful termination does not qualify as equitable under § 1132(a)(3).

As a preliminary matter, Plaintiff does not allege that he is entitled to $800,000 based on a theory of restitution. See Compl. at 11. Restitution is available "only when one party has been enriched at another's expense." *Harris Trust & Savings Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 615 (7th Cir. 1995) (quoting *Health Cost Controls v. Skinner*, 44 F.3d 535, 538 n. 7 (7th Cir. 1995)). To state a claim, Plaintiff must allege: (1) he had a reasonable expectation

7

of payment, (2) that defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment. See *id.* There are no allegations in the complaint that support a restitution claim or indicate that the ABA was unjustly enriched by the $800,000 that Plaintiff seeks. Instead, Plaintiff simply appears to request money damages as compensatory relief for his alleged wrongful termination. See Compl. ¶ 21.

Second, Plaintiff does not seek to recover money damages from a specifically identified fund that is separate from Defendants' assets generally. In *Sereboff*, the Supreme Court reiterated that "one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on particular funds or property in the defendant's possession." *Sereboff v. Mid Atlantic Medical Servs.*, 547 U.S. 356, 362 (2006) (internal quotations omitted). There, a claim for restitution was deemed to be equitable under § 1132(a)(3) because the plaintiff "sought specifically identifiable funds that were within the possession and control of the [defendants]— that portion of the tort settlement due to [plaintiff] under the terms of the ERISA plan, set aside and preserved" in the defendants' account. *Id.* at 362–63 (internal quotations omitted). That is not the case here.

Third, unlike in *Mondry*, Plaintiff fails to establish that Defendants breached a fiduciary duty owed to him when he was demoted and terminated. It's not even clear whether Plaintiff believes that Defendants qualified as fiduciaries with respect to him. In one part of Plaintiff's sur-reply brief, Plaintiff writes that "Defendants breached their fiduciary duty to the Plaintiff, as the Plan Administrator." See Pl.'s Reply to Defs.' Resp. at 5, [39]. In other parts, however, Plaintiff argues that Defendants "acted only as fiduciaries to the Plan in demoting and terminating [him]." *Id.* at 3–4. And although the complaint alleges that Defendants are

8

fiduciaries with respect to the Plan, it does not assert that Defendants were fiduciaries with respect to Plaintiff. The Court therefore will not impute to Defendant a fiduciary duty that was breached when the ABA decided, as Plaintiff's employer, to demote and terminate Plaintiff because of his actions as Plan Administrator. See Compl.; see also *Brooks v. Pactiv Corp.*, 729 F.3d 758, 766 (7th Cir. 2013) ("An employer does not act as an ERISA fiduciary when it decides to terminate an employment relationship.").[3]

For all of these reasons, Plaintiff has not established an equitable claim for monetary relief under § 1132(a)(3). Despite Plaintiff's attempts to characterize the $800,000 that he seeks as "equitable" monetary relief, Plaintiff actually seeks a legal remedy of money damages—a remedy that is unavailable to him under § 1132(a)(3). See *Mertens*, 508 U.S. at 255 ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties[] * * * the classic form of *legal* relief.") (emphasis in original). Because Plaintiff does not seek "appropriate equitable relief" under § 1132(a)(3), his claim must be dismissed. See, *e.g., id.* at 251 (affirming dismissal of complaint where plaintiff sought money damages under § 1132(a)(3)); *Mondry*, 557 F.3d at 804–05 (affirming dismissal of claim against CIGNA because plaintiff's request for reimbursement was "a form of legal relief that section 1132(a)(3) does not authorize"). Defendants' motion to dismiss Plaintiff's ERISA claim

---

[3] Plaintiff also cites an amicus brief filed by the U.S. Secretary of Labor in support of the plaintiffs in *Nauman v. Abbott Laboratories*, 04-CV-7199 (N.D. Ill.). According to Plaintiff, the brief supports his position that he should be allowed to obtain monetary damages. See Pl.'s Memo. at 5, [32]. The district court in *Nauman*, however, did not even comment on the Department of Labor's position (much less adopt it) when it entered judgment against the plaintiff on all counts. See *Nauman v. Abbott Laboratories*, 2010 WL 3423132, *46, n. 8 (N.D. Ill. Apr. 22, 2010), aff'd, 669 F.3d 854 (7th Cir. 2012). As Plaintiff concedes, the Department of Labor is not the adjudicator of ERISA claims. See Pl.'s Memo. at 5, [32]. The Court, of course, must follow binding precedent on the issue of whether Plaintiff's requested relief is authorized here.

therefore is granted with leave to replead within 28 days of the date of this order if he believes that he can overcome the deficiencies identified above.

### B. State Law Claim

The Court now turns to Plaintiff's state law claim against Defendant Krsul for intentional interference with Plaintiff's employee-employer relationship with the ABA. Plaintiff has not alleged any independent basis for federal jurisdiction over this claim. Although supplemental jurisdiction exists where a state claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," a district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367. Animated by the principle of comity, the Seventh Circuit has stated consistently that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999). See also *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Exceptions to the general rule exist "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

These exceptions do not apply. First, under the Illinois Savings Statute, Plaintiff will have the opportunity to refile his state law claim in state court. See 735 ILCS 5/13-217 (giving plaintiffs the opportunity to refile a new action within one year of dismissal by a district court for

lack of jurisdiction). Second, substantial judicial resources have not been committed to the state claim, as the Court is disposing of it relatively early at the motion to dismiss stage. Third, it is not "absolutely clear" how the state claim should be decided, given the parties' various arguments in support of, and in opposition to, dismissal of the claim. Moreover, even assuming that the claim is valid, the parties have not completed written and oral discovery. The Court therefore finds no justification to depart from the "usual practice" in this case and will dismiss Plaintiff's state law claim without prejudice unless Plaintiff is able to replead his federal ERISA claim.

**IV. Conclusion**

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's complaint [27] without prejudice. Plaintiff has 28 days from the date of this order to replead his ERISA claim if he believes that he is able to state a valid claim. If Plaintiff does not replead, or if his amended complaint is dismissed, the Court will dismiss the state law claim without prejudice.

Dated: December 15, 2014

                                                 Robert M. Dow, Jr.
                                                 United States District Judge