**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERTO TRUJILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 CV 8541 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| AMERICAN BAR ASSOCIATION and | ) | |
| JOHN KRSUL, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint [77]. For the reasons set forth below, Defendants' motion [77] is granted with respect to Plaintiff's ERISA claim and denied with respect to Plaintiff's state law tortious interference claim.

**I.      Background[1]**

Pro se Plaintiff Roberto Trujillo filed his initial complaint against Defendants the American Bar Association ("ABA") and John Krsul in December 2013.  In it, he sought "equitable monetary relief" under ERISA based on his alleged wrongful termination from his position with the ABA.  [7], Compl. ¶ 22(B).  Plaintiff also sought compensatory and punitive damages for Krsul's alleged tortious interference with Plaintiff's employment relationship with the ABA.  *Id.* at ¶ 22(D).

The Court dismissed Plaintiff's ERISA claim without prejudice because the allegations did not establish that Plaintiff sought "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3).  [69], Mem. Op. at 9–10.  Rather, the allegations indicated that Plaintiff sought compensatory damages, which is legal relief.  *Id.*  After dismissing Plaintiff's only federal claim, the Court

---

[1] The Court accepts as true the facts alleged in Plaintiff's amended complaint and makes all reasonable inferences in his favor.  See *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

declined to exercise supplemental jurisdiction over the state law tortious interference claim. *Id.* at 10–11. Plaintiff has filed an amended complaint, which Defendants again move to dismiss.

The Court set forth the facts in detail in its previous memorandum opinion and provides a shorter summary here. Defendant ABA sponsors an employee pension plan ("the Plan") that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). [73], Am. Compl. ¶ 9. This made the ABA a fiduciary to the Plan. *Id.* Defendant John Krsul chaired the Plan's Administrative Committee. *Id.* at ¶ 10. The Committee is the named fiduciary of the Plan, and as chair of the Committee, Krsul also qualifies as a fiduciary. *Id.*

Plaintiff was hired by the ABA in June 2010 to serve as a program director in its human resources department. [73], Am. Compl. ¶ 11. In May 2011, the Committee appointed Plaintiff to serve as Administrator of the Plan, making Plaintiff a fiduciary to the Plan. See *id.* at ¶ 12. Plaintiff's Plan Administrator role was distinct from, and in addition to, Plaintiff's human resources position with the ABA. *Id.*

As Plan Administrator, Plaintiff alerted the ABA and Krsul to problems with the Plan's record keeping and to overpayments and miscalculations of participant benefits. See [73], Am. Compl. ¶ 15. On March 2, 2012, Plaintiff decided that certain invoices submitted by the Plan's counsel qualified as "settlor fees," which under ERISA must be paid by the Plan sponsor (here, the ABA) and not by the Plan itself. See *id.* at ¶ 17. Under the terms of the Plan, Plaintiff allegedly had authority to make the determination about how to classify the invoices, but Krsul questioned Plaintiff's determination and had it reviewed by a sub-committee. *Id.* Although Plaintiff provided supporting material to the sub-committee, Krsul ultimately ordered Plaintiff to pay the invoices with Plan assets. *Id.* Subsequently, the ABA's Executive Director told Plaintiff

that if he "continue[d] to use an independent analysis toward the payment of Plan invoices, [his] job would be in jeopardy." *Id.* at ¶ 19.

Around the same time, Krsul emailed the ABA's Chief Financial Officer to ask "whether there was anything going on with the Plaintiff professionally that he should be aware of as the Committee Chair." [73], Am. Compl. ¶ 18. Plaintiff contends that by sending this email, Krsul sought to "slander" his reputation with the ABA, his employer. *Id.* Several days later, Krsul called Plaintiff and several other ABA employees and falsely accused Plaintiff of failing to process some of his reimbursement checks. *Id.* at ¶ 20. Towards the end of the same month, allegedly in retaliation for the settlor fee disagreement, Krsul proposed that the Plan outsource Plaintiff's Plan Administrator job. *Id.* at ¶ 21. According to Plaintiff, Krsul made this suggestion to have Plaintiff removed from his role as Plan Administrator and to make him appear incompetent with respect to his position in human resources. See *id.* Plaintiff subsequently lost his Plan Administrator position and later was terminated from his human resources job. See *id.* at ¶ 27.

In his amended complaint, Plaintiff seeks $80,500 in "equitable monetary relief" from the Plan Assets Trust for his wrongful termination from his Plan Administrator position, which includes "lost wages, employee benefit contributions and lost business experience." *Id.* at ¶ 31(A). Plaintiff continues to seek $800,000 in compensatory damages and $950,000 in punitive damages for Krsul's alleged tortious interference with his employment relationship with the ABA. *Id.* at ¶ 31(B).

## II. Legal Standard

Defendants move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as

true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint must provide the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

As before, Plaintiff brings two claims: (1) an ERISA claim under 29 U.S.C. § 1140 for wrongful retaliation and termination against both Defendants, pursuant to 29 U.S.C. § 1132(a)(3), and (2) a state law claim against Krsul for tortious interference with Plaintiff's employment relationship with the ABA.

### A. Plaintiff's ERISA Claim

Plaintiff seeks to bring suit under 29 U.S.C. § 1140, which prohibits interference with one's rights under ERISA.[2] As before, Plaintiff's theory seems to be that Defendants violated § 1140 by terminating him for voicing concerns about whether certain invoices qualified as settlor fees. To bring suit, however, Plaintiff's requested relief must come within the scope of

---

[2] The Court assumes that Plaintiff seeks to proceed under the portion of § 1140 that makes it unlawful "to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to" ERISA, based on the allegation that he was discharged for providing input and information about the settlor fee issue.

the ERISA civil enforcement provision set forth in 29 U.S.C. § 1132(a)(3). See § 1140 ("The provisions of section 1132 of this title shall be applicable in the enforcement of this section."). Section 1132(a)(3) "authorizes only a limited range of remedies, raising a threshold question as to whether the relief [Plaintiff] demands is authorized." *Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 804 (7th Cir. 2009). Specifically, the statute provides that a fiduciary may bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

§ 1132(a)(3).

As Plaintiff is not seeking an injunction, his requested relief must qualify as "other appropriate equitable relief." Monetary relief is allowed under § 1132(a)(3) only "if it falls within the scope of the 'other appropriate equitable relief' authorized by the statute." *Mondry*, 557 F.3d at 804. "Other appropriate equitable relief" means "those categories of relief that were *typically* available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (emphasis in original). Plaintiff contends that the money that he seeks qualifies as "other appropriate equitable relief," because he seeks to recover under an equitable restitution theory. In particular, Plaintiff claims that the money that he seeks is "standard restitution in equity," because it is sought only in the event that Defendants refuse to reinstate him. [84], Pl.'s Resp. at 5. But nowhere in his prayer for relief does Plaintiff ask to be reinstated. See [73], Am. Compl. ¶ 31(A) (alleging that he seeks "equitable monetary relief based on the Defendants' insistence to not reinstate the Plaintiff[.]"). The Court accordingly proceeds by evaluating whether the money damages that Plaintiff seeks qualify as equitable restitution.

"[N]ot all relief falling under the rubric of restitution is available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  The Court previously concluded that the monetary relief that Plaintiff sought did not qualify as equitable restitution because Plaintiff did not allege that he sought damages under a theory of restitution generally, he failed to allege that Defendants owed him a fiduciary duty that was broken when he was terminated, and he did not seek to recover from a specifically-identified fund separate from Defendants' general assets.  See [69], Mem. Op. at 7–9.  In response to the Court's discussion, Plaintiff amended several of his allegations.  First, Plaintiff reduced the amount that he seeks from $800,000 to $80,500.  [73], Am. Compl. ¶ 31(A).  Plaintiff also added several paragraphs alleging that Defendants owed him fiduciary duties that were breached by ignoring his settlor fee determination and subsequently demoting and terminating him for his actions as Plan Administrator.  See *id*. at ¶¶ 27, 30–31.  Finally, Plaintiff now claims that his damages should be paid from the Plan Assets Trust and that his salary for his duties as Plan Administrator was paid from there.  See *id*. at ¶¶ 14, 31(A).   In their motion to dismiss, Defendants argue that Plaintiff still is not requesting "appropriate equitable relief" under the ERISA civil enforcement provision.  For the reasons explained below, the Court agrees and dismisses Plaintiff's ERISA claim.

First, as in his original complaint, Plaintiff's allegations do not state a claim for restitution, equitable or otherwise.  Restitution is available "only when one party has been enriched at another's expense."  *Harris Trust & Savings Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 615 (7th Cir. 1995) (quoting *Health Cost Controls v. Skinner*, 44 F.3d 535, 538, n.7 (7th Cir. 1995)).  To state a claim for restitution, Plaintiff must allege: (1) that he had a "reasonable expectation of payment," (2) that Defendants "should reasonably have expected to

pay," or (3) "society's reasonable expectations of person and property would be defeated by nonpayment." *Id.* (internal citations omitted).

Plaintiff again has not sufficiently alleged any of these three things. He also fails to allege any facts suggesting that Defendants were enriched to his detriment when he was terminated. Instead, Plaintiff's damages are said to "reflect lost wages, employee benefit contributions and lost business experience" that he would have received had he not been terminated. [73], Am. Compl. ¶ 31(A). Nor does asking for less money make his claim equitable. Much as in his original complaint, "Plaintiff simply appears to request money damages as compensatory relief for his alleged wrongful termination." [69], Mem. Op. at 8.

Even if Plaintiff stated a valid restitution claim, it still fails because it does not qualify as *equitable* restitution. See *Knudson*, 534 U.S. at 212 ("[N]ot all relief falling under the rubric of restitution is available in equity."). "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession," by imposing "a constructive trust or equitable lien on particular property[.]" *Id.* at 214. See also *Sereboff v. Mid Atlantic Medical Servs. Inc.*, 547 U.S. 356, 362–63 (2006) (finding plaintiff's restitution claim to be equitable because the plaintiff "sought specifically identifiable funds that were within the possession and control of the [defendants]—that portion of the tort settlement due to [the plaintiff] under the terms of the ERISA plan, set aside and preserved" in the defendants' account) (internal quotation marks omitted).

Plaintiff attempts to make his requested relief equitable by alleging that his damages would be paid from the Plan Assets Trust, separate from the ABA's general assets. Even assuming that Plaintiff's salary for his Plan Administrator job was in fact paid from the Plan

Assets Trust—which Defendant disputes[3]—and that his damages would be paid from there, the allegations still do not establish a claim that lies in equity. In particular, there are no allegations suggesting that the $80,500 that Plaintiff seeks may "clearly be traced to particular funds or property in [Defendants'] possession," that "in good conscience, belong[ ] to [Plaintiff]." See *Knudson*, 534 U.S. at 214. Rather, Plaintiff simply wishes to impose liability on Defendants in the amount of $80,500, which represents the wages that he lost as a result of his termination. Alleging that this money should be paid from a particular account does not make Plaintiff's claim equitable. See *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 410 (7th Cir. 2004) (holding that ERISA claim was legal, not equitable, in nature, because "AIG wants money, not the return of the checks it issued * * * or the contents of a segregated fund, and [*Knudson*] rejected the possibility of applying the 'restitution' label to demands of this kind."); *Barnes v. Duffy*, 2004 WL 2931326, at *10 (N.D. Ill. Dec. 15, 2004) (holding that claim was not equitable because the plaintiffs were "not seeking the recovery of any particular funds," because they did "not care which money they recover, so long as they get the money they allegedly improperly paid.").

Finally, Plaintiff cannot make his claim for lost wages equitable under *Mondry* by alleging that Defendants breached a fiduciary duty to him by terminating him. In *Mondry*, the Seventh Circuit observed that "restitution is equitable when it is sought by a person complaining of a breach of trust." 557 F.3d at 806 (quoting *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 498 (7th Cir. 1999)) (internal quotation marks omitted). As a preliminary matter, the allegations

---

[3] Plaintiff relies on an Administrative Services Agreement in support of his contention that his Plan Administrator salary was paid from the Plan's assets. [73], Am. Compl. ¶ 14. Defendants contest this allegation and have attached a copy of the Agreement, which states that Plaintiff was to be paid by the ABA and that the Plan would reimburse the ABA for some of the cost of Plaintiff's salary, thereby contradicting Plaintiff's allegation that he was paid directly from the Plan Asset Trust. See [78-1], Exh. at 2–3. The Court may consider this document because it is referenced in Plaintiff's complaint and is central to his claim. See *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

are insufficient because they do not suggest that Defendants should be made to "disgorge [a] gain [that they] enjoyed * * * that [a] breach of trust helped to bring about," as would be required to state a restitution claim premised on a breach of fiduciary duty.  See *id.* at 807.  In addition, and as Defendants argue, Defendants do not qualify as fiduciaries with respect to Plaintiff.  The language creating fiduciary duties under ERISA is contained in 29 U.S.C. § 1104(a)(1), *Alton Mem. Hosp. v. Met. Life Ins. Co.*, 656 F.2d 245, 249 (7th Cir. 1981), which states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of *the participant and beneficiaries*," § 1104(a)(1) (emphasis added).  Accordingly, "fiduciary duties lie only to the plan participants and their beneficiaries[.]"  *Alton Mem. Hosp.*, 656 F.2d at 249.  Plaintiff does not allege that he is a participant or beneficiary; rather he specifically alleges that, as Plan Administrator, he was a fiduciary to the Plan.  [73], Am. Compl. ¶ 12.

For the foregoing reasons, Plaintiff again has failed to establish that he is seeking equitable relief.  Instead, his amended allegations make clear that he seeks compensatory damages stemming from his termination—the "classic form of *legal* relief" that is unavailable under § 1132(a)(3).  *Mertens*, 508 U.S. at 255 (emphasis in original).  The Court therefore dismisses the ERISA claim.  See, *e.g.*, *id.* at 251 (affirming dismissal of complaint seeking only compensatory damages under § 1132(a)(3)).  Plaintiff now has had two opportunities to plead a claim for equitable relief, both of which have left the Court convinced that Plaintiff seeks legal relief for lost wages.  To the extent that Plaintiff seeks to recover only monetary damages stemming from his termination, his ERISA claim therefore is dismissed with prejudice.[4]

---

[4] As noted, Plaintiff makes reference in his amended complaint to Defendant's "insistence to not reinstate him."  See [73], Am. Compl. ¶ 31(A).  Although Plaintiff's requested relief, as currently drafted, does not include a claim for reinstatement (only damages based on Defendant's refusal to reinstate him), the Court notes that requests for reinstatement may qualify as equitable relief.  See, *e.g.*, *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1255, n. 8 (10th Cir. 2004) (in the context of an ERISA claim, observing that "[t]he remedy of reinstatement is essentially injunctive relief" and therefore qualifies as equitable

## B.      Plaintiff's Tortious Interference Claim

Having dismissed the ERISA claim, the Court turns to Plaintiff's state law claim alleging that Defendant Krsul tortiously interfered with Plaintiff's employment relationship with the ABA.  The Court previously dismissed this claim because Plaintiff asserted no independent basis for jurisdiction over it, and the Court declined to exercise supplemental jurisdiction.  See [69], Mem. Op. at 10–11.  In his amended complaint, Plaintiff alleges that the Court has diversity jurisdiction, as Plaintiff is a citizen of Illinois, Krsul is a citizen of Michigan, and the amount in controversy is in excess of $800,000.  [73], Am. Compl. ¶¶ 3, 7, 10, 31(B).

To state a claim for tortious interference with an employment relationship under Illinois law, a plaintiff must allege: "(1) a reasonable expectation of continued employment; (2) defendant's knowledge of this expectancy; (3) interference by the defendant for the purpose of defeating this expectancy; and (4) damages to the plaintiff resulting from the interference." *Vickers v. Abbott Laboratories*, 719 N.E.2d 1101, 1116 (Ill. App. Ct. 1999).  Plaintiff alleges that Krsul, "intended to disrupt [his] non-fiduciary employment relationship with Defendant ABA by making false accusations about how [he] mismanaged and misinterpreted the Plan Administrator's fiduciary role [and] authority under ERISA," and influenced the ABA's decision to terminate him from his human resources position.  [73], Am. Compl. ¶ 27(c).  Plaintiff further alleges that his reputation in the human resources department "was damaged by [ ] Krsul"

---

relief).  Defendants do not suggest that a reinstatement claim would fall outside of the scope of the ERISA civil enforcement provision, generally; they maintain, however, that any claim for reinstatement by Plaintiff would not be viable (presumably because of hostility between the parties), and that, therefore, a claim for back pay, which might be coupled with an equitable reinstatement claim, would not qualify as equitable relief.  See [85], Defs.' Resp. at 10–11 (citing *Millar v. The Larkin Law Firm, PC*, 2010 WL 1325182 (S.D. Ill. Mar. 30, 2010)).  Although the Court will not allow Plaintiff to amend his allegations for a third time to attempt to bring a free-standing claim for lost wages, the dismissal of his ERISA claim is without prejudice to the extent that Plaintiff may wish to file a motion for leave to amend his complaint to bring an equitable claim for reinstatement under ERISA.

because the chief human resources officer believed Krsul's false accusations.  *Id.* at ¶ 27(d).  Defendants move to dismiss, arguing that the claim is preempted by ERISA.

The ERISA preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"  29 U.S.C. § 1144(a).  A law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983).  "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is preempted.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *see also Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998) (ERISA "preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan").

"A state-law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions," however, if the claim "does not require [the court] to interpret or apply any of the Plan's provisions."  *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 780 (7th Cir. 2002).  In other words, where a state law claim "does not implicate any of ERISA's fundamental concerns" but an ERISA plan "is merely the context in which [the alleged unlawful conduct] occurred," the state law claim is not preempted.  *See id.* at 779.  Thus, in *Biondi*, a common law fraud claim alleging that the defendant intentionally failed to notify a health fund of his divorce, and misrepresented to the fund that he still was married to cause the fund to continue to provide benefits to his former spouse, was not preempted by ERISA, even though the alleged fraud took place in the context of an employee benefit plan.  *See id.* at 781.

Similarly here, Plaintiff seeks to bring a tortious interference claim with respect to his employment in the ABA's human resources department.  The allegations concerning his role as

Plan Administrator are only incidental to his state law claim. In particular, Plaintiff alleges that Krsul interfered with his employment relationship with the ABA by accusing him of doing a poor job as Plan Administrator. Based on the allegations in the complaint, the Court is not persuaded at this time that interpretation or application of the Plan will be necessary to resolve whether Krsul's alleged conduct qualifies as interference with Plaintiff's employment relationship with the ABA. Nor does Plaintiff's tortious interference claim attempt to "mandate employee benefit structures," regulate the ERISA plan at issue, or serve as an "alternative enforcement mechanism to ERISA." See *Biondi*, 303 F.3d at 775 (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995), and explaining that the Supreme Court has identified at least three instances in which a state law has connection with an employee benefit plan and is preempted).

Defendant's reliance on *Ingersoll-Rand Company v. McClendon*, 498 U.S. 133 (1990), does not persuade the Court otherwise. There, the plaintiff's state law wrongful termination claim—which alleged that an employer terminated the plaintiff to avoid contributing to, or paying benefits under, a pension plan—was deemed preempted. See 498 U.S. at 140. Preemption applied because the state law cause of action made specific reference to, and was premised on, the existence of a pension plan, as the cause of action allowed "recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." *Id.* (internal citation and quotation marks omitted). A common law tortious inference claim, by contrast, generally is not premised on, or related to, an ERISA plan. See also *Biondi*, 303 F.3d at 778 (distinguishing *Ingersoll-Rand* where the cause of action was designed to affect employee benefit plans, because the plaintiff's fraudulent concealment claim was "a traditional state-based law of general

applicability [that] clearly makes no direct reference to ERISA plans nor relies on the existence of such plans to operate.").

Finally, Defendant argues that the tortious interference claim must be dismissed because Krsul was acting as the ABA's agent.  Under Illinois law, "a corporate employer cannot interfere with its own business relationship with its employees," which would include an "employee[] acting on behalf of an employer."  *Vickers*, 719 N.E.2d at 1116.  Instead, the plaintiff must establish some "action by the defendant toward a third party."  *Id.*

For purposes of evaluating Plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6), Defendants' contention that Krsul was acting on the ABA's behalf when he allegedly interfered with Plaintiff's relationship with the ABA is unavailing.  As noted, the Court must assume as true the allegations in Plaintiff's complaint.  Here, Plaintiff specifically alleges that Krsul is not employed by the ABA, [73], Am. Compl. ¶ 10, but rather, that he is "a long standing and influential member of the ABA" who served on the Plan's Administrative Committee, *id.* at ¶ 27(c).  Plaintiff also alleges that Krsul interfered with his employment with the ABA, which allegedly was separate from his position as Plan Administrator.  See *id.* at ¶ 27 (alleging that Krsul "intentionally interfered with the economic relationship between Plaintiff and his non-fiduciary role employment with the ABA[.]").  The Court accordingly concludes that Plaintiff has plausibly alleged that Krsul was not acting on behalf of the ABA, or as an employee of the ABA, when he allegedly damaged Plaintiff's reputation with the ABA's human resources department by accusing him of doing a poor job in his role as Plan Administrator.  Perhaps discovery will belie these allegations, but at this stage of the case, the allegations control and are sufficient to state a claim.

For all of these reasons, the Court denies Defendant's motion to dismiss Plaintiff's tortious interference claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [77] is granted with respect to the ERISA claim and denied with respect to the tortious interference claim.


Date: August 28, 2015

_____
Robert M. Dow, Jr.
United States District Judge